

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-22-2005

# Radoncipi v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-3184

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Radoncipi v. Atty Gen USA" (2005). *2005 Decisions*. Paper 62.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/62

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————————

No: 04-3184

———————————

ERMALD RADONCIPI,

Petitioner

v.

ALBERTO GONZALES*, ATTORNEY
GENERAL OF THE UNITED STATES

Respondent

———————————

On Petition for Review of an Order of the
Board of Immigration Appeals
(Board No.   A76 140 526)

———————————

Submitted Under Third Circuit LAR 34.1(a)
on June 28, 2005

BEFORE:  ROTH, RENDELL and BARRY, <u>Circuit Judges</u>

(Filed December 22, 2005)

———————————

OPINION

———————————

———————————

*Attorney General Alboert Gonzales has been substituted for former Attorney General

John Ashcroft, the original respondent in this case, pursuant to Fed. R. App.P. 43(c).

ROTH, Circuit Judge:

Petitioner, Ermald Radoncipi, applied for asylum, withholding of removal, and protection under the United Nations Convention against Torture (CAT). His application was denied by the Immigration Judge (IJ), and the IJ's decision was affirmed without opinion by the Board of Immigration Appeals (BIA). Radoncipi petitioned for review. We conclude that the opinion of the IJ is supported by substantial evidence. For that reason, we will deny the petition.

## I. Factual Background and Procedural History

As the facts are well known to the parties, we give only a brief description of the facts and procedural posture of the case.

Radoncipi is a citizen of Albania. He arrived in the United States at Newark airport on January 22, 1999. The passport he used was in the name of Elidon Bekurti. He arrived together with Gertriana Bebri and presented himself as her husband, although they were not married. He was issued a notice to appear before an IJ, charging him with removability. Bebri was also issued a notice to appear. Proceedings before the IJ began on May 5, 1999. Radoncipi was represented by counsel. Proceedings were adjourned until March 10, 2000, when the Radoncipi and Bebri cases were severed.

At his hearing, Radoncipi testified that his sister was granted asylum in 1999 and that his parents, living in New York, were in asylum proceedings at that time. Radoncipi

2

had worked as a security guard at the American Embassy in Tirana, Albania, between July 1996 and December 1998. He testified that he was a member of the Student Union and the Democratic Party and had participated in the latter's meetings, demonstrations, and rallies. In 1997, armed persons purporting to be members of the Communist Party broke down the door to his parents' house and threatened them for their purported political affiliation. Radoncipi was at the U.S. Embassy when these events unfolded but discussed them with his parents, who feared to report them to the authorities. After his mother was threatened on other occasions, his parents left for the United States. Radoncipi testified that he feared to return to his parents' home and therefore moved in with relatives.

Radoncipi testified that, following the assassination of the leader of the Democratic Party, he participated in a demonstration on September 14, 1998. The government ended the demonstration with force. Radoncipi termed it a "massacre." Radoncipi claimed he was attacked and beaten by the police at the demonstration. He was bruised but did not seek medical attention.

He testified that on December 8, 1998, he attended a student rally in Tirana in front of the University of Tirana and gave a speech there. He was grabbed by men in civilian clothing, who hit him in the stomach and took him to a police station. At the station, he was questioned and his stomach, arms and legs were beaten with a police stick for an hour. He was then dragged into the street.

3

He claims that afterwards he organized and participated in a student hunger strike between December 11 and December 13, 1998. Armed police forcibly removed the students from the building in which they were holding the hunger strike. Radoncipi and Bebri fled to Macedonia on December 13, 1998. On December 14, they went to the U.S. Embassy in Skopje, Macedonia, to seek student visas. Radoncipi's application was turned down for lack of documentary support, or perhaps because of his age. He was not sure which. They then went to Bulgaria where Bebri applied for a student visa to the U.S. She too was turned down. They returned to Albania, obtained fake passports, entered the United States in January 1999, and presented themselves as husband and wife to U.S. authorities. The passports had been obtained by Bebri's father. Radoncipi used his because he was "terrified because [of] what had occurred to my family and what has occurred to me."

On cross-examination, it was brought out that U.S. Embassy records indicated that Radoncipi was at work on December 8, 1998 – a day on which he testified that he had attended a demonstration. Radoncipi responded that he had made prior arrangements with a friend, another embassy employee, to cover for him. With regard to the hunger strike on December 11 and 12, 1998, embassy records reflected that he worked the 11 p.m. through 7 a.m. shift on December 11-12; his asylum application indicated, however, that he remained "in the Student Center." He blamed the inconsistency on translation error. Radoncipi then claimed to have done both. With regard to his December 13-14

4

"flight" to Macedonia after the student hunger strike, the IJ noted that on December 10 Radoncipi had requested leave from work from December 13-17. With regard to party membership dues, Radoncipi testified that he paid dues, but his membership book did not reflect any payments.

Bebri was unwilling to testify on Radoncipi's behalf. His mother attended the hearing but did not testify.

The IJ denied Radoncipi all relief and found the application frivolous. The IJ noted both inconsistencies within Radoncipi's testimony and inconsistencies between his testimony and his asylum application. The IJ concluded that the trip to Macedonia had been pre-arranged and not taken because of fear of persecution following the hunger strike. The IJ found the ultimate issue "self-evident"– Radoncipi "enter[ed] into an elaborate scheme with his ex-fiancee in order to gain access to the United States."

Radoncipi appealed to the BIA. He argued that the BIA should consider new evidence in that his parents had recently been granted asylum. The BIA affirmed without opinion.

## II. Jurisdiction and Standards of Review

We have jurisdiction under Immigration and Nationality Act, 8 U.S.C. § 1252(b)(1) (2005), to review final orders of the BIA. Radoncipi filed a motion to reconsider the BIA order. The BIA denied this motion. Radoncipi filed no petition for review of the denial of reconsideration.

5

Because the BIA has affirmed without opinion, our review is of the IJ's findings. *See Abdulai v. Ashcroft*, 235 F.3d 542, 547 n.2 (3d Cir. 2001). With regard to denial of applications for asylum, withholding of removal, and protection under CAT, our standard of review is highly deferential:  the finding must be upheld unless the evidence not only supports a contrary conclusion, but compels it.  *Abdille v. Ashcroft*, 242 F.3d 477, 483-84 (3d Cir. 2001).

### III. Discussion

Our review of the record and of the IJ's decision reveals sufficient evidence to support the decision.  The discrepancies between the embassy records of Radoncipi's work attendance versus his claims of participating in demonstrations support the IJ's credibility determinations.  The conflict between the "flight" to Macedonia on December 13 to escape police retaliation after the December 11 hunger strike and the fact that on December 10 Radoncipi had requested leave from work at the embassy from December 13 to 17 also supports the IJ's findings.  There is a sufficient basis to find that Radoncipi's story was internally inconsistent and lacked credibility,[1] thus justifying the denial of asylum and all other relief.

As for Radoncipi's argument that the I.J. improperly considered the findings he reached in Bebri's case, we find no error.  The IJ's reference was to the fraudulent

---

[1] Although the IJ nowhere used this specific language -- i.e., internally inconsistent and lacking in credibility -- it was clearly implied.

passports, which Radoncipi and Bebri carried. There is no prejudice here because Radoncipi concedes that he and Bebri attempted to enter the U.S. as husband and wife on false passports. Radoncipi points to no specific testimony or evidence from the Bebri proceedings that was used by the IJ to Radoncipi's disadvantage. His argument fails to specify the specific Bebri-related testimony to which he objects and it fails to elucidate any legal doctrine offended.

Finally, Radoncipi argues that BIA affirmance without opinion was error. We held, however, in *Dia v. Ashcroft*, 353 F.3d 228, 234-45 (3d Cir. 2003) (en banc) that affirmance by the BIA without opinion is not constitutionally unfair. Moreover, the fact that Radoncipi's parents had been granted asylum on the facts that they presented in a different case is irrelevant to Radoncipi's petition and need not have been considered by the BIA.

## IV. Conclusion

As Radoncipi failed to establish his eligibility for asylum, he necessarily failed to meet the higher standard of eligibility for withholding of removal. He also failed to establish that he was entitled to protection under the Convention Against Torture. Therefore, for the reasons explained above, we will deny the petition for review.